**SHEREEN J. CHARLICK**
California State Bar No. 147533
**FEDERAL DEFENDERS OF SAN DIEGO, INC.**
225 Broadway, Suite 900
San Diego, California 92101-5008
Telephone: (619) 234-8467

Attorneys for Ms. Rachelle Lynette Carlock

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

**(HONORABLE MARGARET M. MCKEOWN)**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CASE NO. 08mj8433 |
| Plaintiff, | ) | |
| | ) | DATE: TBA |
| | ) | TIME: TBA |
| v. | ) | |
| | ) | NOTICE OF MOTION AND MOTION TO: |
| RACHELLE LYNETTE CARLOCK, | ) | (1)     REVOKE DETENTION ORDER |
| Defendant. | ) | |
| | ) | |
| _____ | ) | |

TO:     KAREN P. HEWITT, UNITED STATES ATTORNEY;
          MICHAEL SKERLOS, ASSISTANT UNITED STATES ATTORNEY:

          PLEASE TAKE NOTICE that on date to be determined by the court, Ms. Carlock, the accused in this case, by and through her attorneys, Shereen J. Charlick, Norma A. Aguilar and Federal Defenders of San Diego, Inc., will request this Court to enter an order granting the following motion.

//
//
//
//

**MOTION**

Ms. Carlock, by and through her attorneys, Shereen J. Charlick, Norma A. Aguilar and Federal Defenders of San Diego, Inc., requests this Court pursuant to the United States Constitution, the Federal Rules of Criminal Procedure, and all other applicable statutes, case law, and local rules for an order to:

1)      Revoke the Detention Order

This motion is based upon the instant motion and notice of motion, the attached statement of facts and memorandum of points and authorities, the files and records in the above-captioned matter, and any and all other materials that may be adduced prior to or during the hearing of this motion.

Respectfully submitted,


Dated:  June 3, 2008                              ___*/s/  Shereen J. Charlick*_____
                                                  SHEREEN J. CHARLICK
                                                  Federal Defenders of San Diego, Inc.
                                                  Attorneys for Ms. Carlock

1  **SHEREEN J. CHARLICK**
   California State Bar No. 147533
2  **FEDERAL DEFENDERS OF SAN DIEGO, INC.**
   225 Broadway, Suite 900
3  San Diego, California  92101-5008
   Telephone:  (619) 234-8467
4

5  Attorneys for Ms. Rachelle Lynette Carlock

6

7

8                     UNITED STATES DISTRICT COURT

9                   SOUTHERN DISTRICT OF CALIFORNIA

10                 **(HONORABLE MARGARET M. MCKEOWN)**

11  UNITED STATES OF AMERICA,        )   CASE NO. 08MJ 8433
                                     )
12          Plaintiff,               )   MEMORANDUM OF POINTS AND
                                     )   AUTHORITIES IN SUPPORT
13      v.                           )   OF MS. CARLOCK'S
                                     )   MOTION TO REVOKE
14                                   )   DETENTION ORDER
    RACHELLE LYNETTE CARLOCK,        )
15                                   )
                                     )
16          Defendant.               )
                                     )
17  _____)

18                        **INTRODUCTION**

19          Ms. Rachelle Lynette Carlock, through undersigned counsel, moves to revoke the

20  detention order issued by Magistrate Judge Peter C. Lewis on May 21, 2008 for multiple reasons.

21  First,  Judge Lewis should not have presided over Ms. Carlock's detention hearing because he

22  should have recused himself under 28 U.S.C. § 455(a).  Judge Lewis has both professional and

23  social relationships with all the District Court and Magistrate Judges of the Southern District of

24  California who sit in the Edward J. Schwartz federal courthouse building located at 940 Front

25  Street.  While no court document to date specifies that Ms. Rachelle Carlock was involved with

26  the incident where a pipe bomb was detonated near the courthouse door on May 4, 2008, the

27  undersigned believes this is the reason why Ms. Carlock, who was arrested in the City of San

28

1    Diego, was brought to El Centro for a detention hearing held in front of Judge Lewis.[1]  Second,

2    Judge Lewis erroneously allowed the government to seek detention alleging that Ms. Carlock

3    posed a danger to the community even though the charges contained in the criminal complaint do

4    not allow detention based upon dangerousness.  *See* 18 U.S.C. § 3142(f)(1)(A)-(E) (specifying

5    limited type of offenses allowing government to seek detention based upon danger to the

6    community none of which include the charged offenses).  Third, Judge Lewis' conclusion that

7    prosecutors proved by a preponderance of evidence that Ms. Carlock, a lifelong resident of San

8    Diego with extensive ties to this community, including family, friends and employment, posed a

9    risk of flight, is equally erroneous.  Judge Lewis also failed to consider any conditions which

10    could assure her appearance as required by statute.  *See* 18 U.S.C. § 312(b)-(c).

11        Finally, Judge Lewis also denied defense counsel's motion to have Ms. Carlock, who was

12    sleeping on the floor at the Imperial County Jail due to overcrowding of female detainees,

13    transported for housing in San Diego, where she would also have better access to her

14    constitutionally guaranteed court-appointed counsel.[2]

15                            **FACTUAL BACKGROUND**

16        According to the criminal complaint, the charges actually filed thus far against Ms.

17    Carlock, are far more pedestrian than the unstated accusation touted in the press that she was

18    involved in the bombing the federal courthouse on May 4, 2008.  Ms. Carlock was arrested in

19    San Diego on May 15, 2008.  Her arrest was not the result of  any law enforcement investigation

20    where she was linked to the pipe bomb incident, but, rather it was the result of a local gun shop

21    which called in a report about a suspicious attempted purchase of a standard issue of smokeless

22    gunpowder.  *See* Exhibit A, Criminal Complaint & supporting affidavit.

23    _____

24        [1] Chief Judge Irma E. Gonzalez's chambers have indicated to government counsel that Ninth
      Circuit Judge Margaret M. McKeown would act as the district judge presiding over this case
25    which confirms that the remaining judges of the Southern District of California have reason to
      believe they should not hear this case.
26

27        [2] In exchange for agreeing to continue the preliminary hearing, the prosecutors have assured
      the undersigned that Ms. Carlock will be brought to San Diego.  If that occurs, the next court date
28    should be held in front of Judge McKeown and Ms. Carlock should not be returned to El Centro to
      appear in front of Judge Lewis as he should not be presiding over her proceedings.

1    Upon arrest, Ms. Carlock was questioned by law enforcement but undersigned counsel

2    has not yet seen the reports of this interrogation.  According to prosecutors, the interrogation was

3    not videotaped.  In its criminal complaint, the government accuses her of going into a gun shop

4    three times: on April 7, 2008, on May 1, 2008 and again on May 13, 2008.  On the first two

5    occasions, they claim that she used a driver's license in a false name and purchased smokeless

6    gunpowder.  She is charged with using the false identification on all three dates, intending to

7    deceive the gun shop dealer in order to obtain explosive materials in violation of 18 U.S.C. §§

8    842(a)(2) & 844(a) (counts 1-3).  *See* Exhibit A.  She is also charged with being a convicted

9    felon in possession of the smokeless gunpowder on April 7 and May 1, 2008 in violation of 18

10   U.S.C. §§ 842(I) & 844(a) (counts 4 & 5).  *Id*.  Finally, she is charged in counts 6-8 with using

11   another's person's identification with intent to violate federal law (specifically 18 U.S.C. §§

12   842(a)(2) &842(i)(1)) all in violation of 18 U.S.C. §1028(a)(7) & 1028(b)(2)(B).  There is no

13   allegation in the criminal complaint that Ms. Carlock had any involvement in the May 4, 2008

14   courthouse bombing.

15   Somehow, the government obtained *ex parte* judicial authorization to transport Ms.

16   Carlock to the federal courthouse located in El Centro, California and have her initial appearance

17   held there.  *See* Court Record ("CR").  At her initial appearance, the government moved to detain

18   Ms. Carlock on both danger to the safety of the community and risk of nonappearance when she

19   initially appeared in federal court.

20   Based upon the government's request, Judge Lewis held a detention hearing on May 21,

21   2008.  There, undersigned counsel moved to recuse Judge Lewis under 28 U.S.C. § 455(a) due to

22   his extensive professional and social relationships with the judges of the Southern District of

23   California, all of whom sit in the Edward J. Schwartz Federal Courthouse Building.  Judge Lewis

24   denied this motion.

25   At the May 21, 2008 hearing, defense counsel also informed Judge Lewis that the

26   government was not entitled to move for detention on the ground that Ms. Carlock presented a

27   threat to the safety of another person or the community because none of the offenses enumerated

28   in the criminal complaint qualify under 18 U.S.C. § 3142(f)(1)(A)-(E).  Judge Lewis found that

1   being a felon in possession of explosive materials qualified as a crime of violence and overruled

2   the defense objection.[3]  Judge Lewis then concluded that Ms. Carlock posed a danger to the

3   community due to the nature of the charges.

4       He also concluded that she posed a risk of flight, however, he never considered whether

5   release upon any combination of conditions could reasonably assure her appearance.  This

6   finding was made in spite of the fact that Ms. Carlock has extensive immediate and extensive

7   family in San Diego and the greater southern California area and has absolutely no travel outside

8   the state let alone the country.  Prior to her arrest, she was both employed at Advantage Rental

9   Cars and was in school studying computer sciences.  She has three children, who reside with

10  their fathers but she has contact with her children.  If released, she could live with her uncle

11  Robert Catlin or her father Gaynor Carlock.

12      Defense counsel advised Judge Lewis that the possible guidelines penalties for the

13  offenses charged in the criminal complaint were not so onerous as to permit an inference that Ms.

14  Carlock would flee.

15      Regarding her criminal history, with the exception of one prior conviction, her record

16  reveals nothing but minor offenses.  While it does reveal some failures to appear, ultimately her

17  cases were resolved, she was not on probation or parole at the time that this offense is alleged to

18  have been committed.

19      In addition, her conditions of confinement are suboptimal to say the least and presently

20  her Fifth Amendment right to due process, her Eighth Amendment right to no excessive bail and

21  her Sixth Amendment right to consult with counsel are being violated by her detention in a jail

22

23      [3] Undersigned cited Judge Lewis to a binding Ninth Circuit case: *United States v. Twine*, 344

24  F.3d 987 (9th Cir. 2003), which holds that the offense of being a felon in possession of a firearm,
    is not a crime of violence under the Bail Reform Act.  This view is shared by other circuits.  *See*

25  *e.g., United States v. Ingle*, 454 F.3d 1082 (10th Cir. 2006); *United States v. Bowers*, 432 F.3d 518
    (3rd Cir. 2005); *see also United States v. Montoya*, 486 F. Supp. 2d 996 (D. Az. 2007) (detention

26  for dangerousness can only be sought based upon an enumerated offense set forth in section
    3142(f)(1)(A)-(E)).  While the Bail Reform Act was amended to allow detention on danger to the

27  community when the offense charges one with possession of a firearm, other destructive device or
    other dangerous weapon, possession of explosive materials does not so qualify as such under

28  18 U.S.C. § 921.

1    facility two hours away from her San Diego lawyer, and which cannot accommodate her due to

2    overcrowding without imposing the punitive measure of solitary confinement.

3        A changed circumstance is that Mr. Donny Love, Ms. Carlocks's close friend, is willing to

4    sign on a bond for Ms. Carlock.

5                                **MEMORANDUM OF LAW**

6        First Magistrate Judge Lewis should not have presided over this detention hearing; he

7    should have recused himself and a judicial officer who does not work for the other judges of the

8    Southern District of California who sit in the Edward J. Schwartz Federal Building should have

9    presided over this case.  Second, Judge Lewis misapplied the Bail Reform Act, 18 U.S.C. § 3142,

10   *et. seq.*, and improperly placed upon Ms. Carlock the burden of proving that she was not a flight

11   risk.  He did not credit her proffer regarding her community ties, and he erroneously relied upon

12   the weight of the evidence, which is supposed to be accorded the least significance to detain Ms.

13   Carlock.

14                                        **I.**

15   **RECUSAL IS WARRANTED WHERE THE CIRCUMSTANCES OF A CASES WOULD
     LEAD A REASONABLE OBSERVANT TO QUESTION THE IMPARTIALITY OF A
16   DISTRICT COURT JUDGE.**

17       Title 28 U.S.C. § 455(a) reads in pertinent part:  "[a]ny justice, judge, or magistrate judge

18   of the United States shall disqualify himself in any proceeding in which his impartiality might

19   reasonably be questioned."  28 U.S.C. § 455(a).  The purpose of § 455(a) is "to promote public

20   confidence in the integrity of the judicial process[.]"  *Liljeberg v. Health Services Acquisition*

21   *Corp.*, 486 U.S. 847, 860 (1988).

22       Section 455(a)'s test for recusal is an objective one and thus "what matters is not the

23   reality of bias or prejudice but its appearance."  *Liteky v. United States,* 510 U.S. 540, 548

24   (1994).  Recusal is required where "'a reasonable person with knowledge of all the facts would

25   conclude that the judge's impartiality might reasonably be questioned.'"  *United States v.*

26   *Clemens*, 428 F.3d 1175,1178 (9th Cir. 2005); *United States v. Hernandez,* 109 F.3d 1450, 1453

27   (9th Cir. 1997); *Yagman v. Republic Insurance,* 987 F.2d 622, 626 (9th Cir. 1993).  *See also*

28   *Liljeberg*, 486 U.S. at 860-61.  Where it is a close question that recusal is warranted, then "the

balance tips in favor of recusal." *Nichols v. Alley*, 71 F.3d 347, 352 (10th Cir. 1995).  Recusal

motions are extremely fact-driven, so the Ninth Circuit is hesitant about comparing cases to prior

situations addressed in case law.  *See Clemens v. United States District Court for the Central*

*District of California*, 428 F.3d 1175, 1178 (9th Cir. 2005).

Although the Ninth Circuit hesitated in comparing and contrasting factual scenarios in

determining recusal motions, nonetheless, *Nichols* is particularly helpful--not only because it is

so factually similar to the allegations in this case, but because the Ninth Circuit specifically

approved of the Tenth Circuit's approach in that case.  *See Clemens*, 428 F.3d at 1178 (finding

guidance in the Tenth Circuit's decision and referring to its list of factors as "helpful").  The

Tenth Circuit looks to a non-exhaustive list of factors to determine whether recusal is warranted,

specifically finding the following factors **insufficient** to warrant recusal:

> (1) Rumor, speculation, beliefs, conclusions, innuendo, suspicion, opinion, and
> similar non-factual matters; (2) the mere fact that a judge has previously
> expressed an opinion on a point of law or has expressed a dedication to upholding
> the law or a determination to impose severe punishment within the limits of the
> law upon those found guilty of a particular offense; (3) prior rulings in the
> proceeding, or another proceeding, solely because they were adverse; (4) mere
> familiarity with the defendant(s), or the type of charge, or kind of defense
> presented; (5) baseless personal attacks on or suits against the judge by a party; (6)
> reporters' personal opinions or characterizations appearing in the media, media
> notoriety, and reports in the media purporting to be factual, such as quotes
> attributed to the judge or others, but which are in fact false or materially
> inaccurate or misleading; and (7) threats or other attempts to intimidate the judge.

*Nichols* 71 F.3d at 351.  *Nichols* involved the Oklahoma City bombing, where the district court

itself suffered a great deal of damage as a result of the bomb which detonated at the Federal

Building.  *Id.* at 350-51.  The Tenth Circuit focused on the extraordinary nature of the case and

noted that none of the factors weighing against recusal was present.  *Id.* at 351.  Moreover, the

Tenth Circuit relied on the Supreme Court's decision in *Liteky*, which focused on the source of

the potential for partiality or bias, *i.e.,* whether the source of bias was "extrajudicial" or

something which arose outside the course of the proceedings.  *Liteky*, itself noted that while this

question was not dispositive, it was certainly significant.  *See Liteky,* 510 U.S. at 554 -55.  This

question of whether the basis for bias is "extrajudicial" guides many of the Courts' opinions and

was a factor in *Clemens*, where the defendant's threats against three district court judges arose

08mj8433

1  during the course of a *pro se* suit he had filed.  *Clemens*, 428 F.3d at 1177.

2       Here, there has been no allegation that the basis for bias relates to any particular judicial

3  proceeding, or that it was motivated by a desire to have an effect on pending litigation.[4]  Like

4  *Nichols*, none of the above-enumerated factors approved by the Ninth Circuit in *Clemens,* are

5  applicable here.  *Nichols* instead focused on the fact that the bomb in that case, although not

6  specifically directed at the federal courthouse, did damage it.[5]  *Id.* at 352.  Ms. Carlock has a

7  stronger claim than the defendant in *Nichols* because, although the level of damage and injury

8  was not comparable to that from the Oklahoma City bombing, the allegation in her case is that

9  the bomb was planted at the federal courthouse and thus, directed at the judiciary.

10      *Clemens* focused on one factor, in particular:  whether the entire federal bench in the

11  Central District had been a "victim" of the threat.  *Clemens*, 428 F.3d at 1180.  In determining the

12  scope of the intended "victim" the court held that because only three specific judges were

13  targeted then no reasonable person could "draw an inference of a threat against the entire bench."

14  *Id.* at 1179.  The court focused on the size and scope of the Central District--the fact that it had

15  many divisions spread all across different counties, with many district court judges at the various

16  division offices.  Obviously, that is far different than the Southern District, which only has one

17  District Courthouse and a single branch office of that Courthouse with one assigned magistrate --

18  who answers to and works for the district court judges.

19      More significantly, the Ninth Circuit relied on the Seventh Circuit's decision in *United*

20  *States v. Nettles*, 394 F.3d 1001 (7th Cir. 2005), in defining how broadly to construe a "victim."

21  *Nettles* involved the purchase of explosives and the subsequent criminal prosecution for

22  attempted damage and destruction of a federal building under 18 U.S.C. § 844(f)(1).  Although

23

24  _____

25      [4]  Section 455(a) does not authorize recusal where the purpose of a threat, or the basis for

26  bias, is created and raised in order to affect pending litigation.  *Clemens*, 428 F.3d at 1179; *United*
   *States v. Yousef,* 327 F.3d 56, 170 (2d Cir. 2003).

27      [5]  The Oklahoma City bomb was directed at the Alfred P. Murrah Federal Building but force

28  was such that it damaged surrounding buildings, including the federal courthouse which was one
   block away.  *Nichols*, 71 F.3d 349.

08mj8433

there was no actual injury, the Seventh Circuit held that recusal was required because:

> A reasonable observer would think that a judge who works in the [courthouse] would want Nettles to be convicted and given a long sentence, rather than to be set free, either forthwith or sooner rather than later, to make another attempt to destroy the courthouse or its occupants. It is true that if Nettles is innocent, and therefore not a threat, the judge's incentive to convict him would be eliminated or at least attenuated. But (it might appear to the reasonable, but outside, observer of the judicial system) a judge might be convinced of Nettles' guilt yet concerned that a jury might acquit him, and might therefore rule against him on evidentiary and procedural issues, regardless of the merits. And innocence is not the only question in a criminal trial; the length of the sentence is another, and it is a question on which the judge retained significant discretion....

*Id.* at 1003. Again, Ms. Carlock's case presents a stronger case for recusal than that in *Nettles*.[6] The allegation, as undersigned understands it, in Ms. Carlock's case is that she was somehow involved in causing actual damage the federal courthouse, not merely an attempting such damage. A reasonable outside of observer could certainly conclude that any alleged implicit threat was against the whole of the Southern District. Unlike *Clemens* but like *Nettles* and *Nichols*, the bomb was not clearly directed at any particular judges but at the courthouse, thus, in turn, the entire federal bench of the Southern District of California. Any reasonable observer would recognize that the explosion here threatened not only the safety of all of the courthouse staff but the sense of security of the courthouse staff as well.[7]

Both *Nettles* and *Nichols* clearly support Ms. Carlock's position and both clarify that the issue is one of **appearance**. In neither case was there any allegation that the district court judges were **actually** biased. *See Nettles* 394 F.3d at 1004; *Nichols*, 71 F.3d at 352. Here, too, the risk of an appearance of bias is too great to overcome. Section 455(a) requires recusal of the entire Southern District of California bench, including Judge Lewis.

---

[6] For the same reasons it recused the District Court, *Nettles* also recused the entire Seventh Circuit. *Id.* at 1004. It held that the threat to the Circuit Court was as significant as that too the District Court, raising an equivalent threat to the appearance of impartiality. *Id.*

[7] Courthouse staff includes all those people that work with the judiciary on a regular basis--the clerks, United States Marshals, secretaries etc.--in short, those people who have regular interaction with the judiciary.

08mj8433

**II.**

**MAGISTRATE JUDGE LEWIS MUST BE RECUSED BECAUSE, 1) AS A MEMBER OF THE JUDICIARY IN THE SOUTHERN DISTRICT, HE WAS AN INTENDED "VICTIM" OF THE ALLEGED CRIME, AND 2) HIS PROFESSIONAL RELATIONSHIP WITH THE JUDICIARY RAISES REASONABLE QUESTIONS ABOUT HIS ABILITY TO REMAIN IMPARTIAL.**

Judge Lewis has a professional relationship with the judges --the alleged intended victims-- and presumably has a personal relationship with them as well.  In ordering recusal, the Fifth Circuit has focused on the nature of the relationships between the different players involved in a particular litigation.  In *United States v. Jordan,* 49 F.3d 152, 154 -56 (5th Cir. 1995), the Fifth Circuit held that the District Court Judge should have recused herself from a criminal case where she had a friendship with an attorney who the defendant had previously accused of criminal actions and with whom the defendant had a history of hostile relations.  The Fifth Circuit held that the personal relationship at issue was so close and complex that any "reasonable person would question the impartiality of the district judge," *Id.* at 158.[8]

In *Clemens,* the Ninth Circuit rejected the argument that personal relationships between the threatened three judges and the remainder of the Central District of California bench might give rise to an appearance of impartiality, but it did so because the nature of these personal relationships was too speculative.[9]  *Id.* at 1180.  That is a far different situation from the one present here.  Although we do not know much about the personal relationship between Judge Lewis and the rest of the bench, we do know about their **professional** relationship.  Specifically, the Magistrate Judges Act makes Magistrate Judge Peter Lewis' reappointment subject to the

---

[8]  On remand, *Jordan* required recusal not just of the district court judge who was hearing the case but also the entire district court bench of the Southern District of Texas. *Jordan,* 49 F.3d at 159 -60.  The Court, though, made clear that it was a remedy on appeal and that it would likely not be the appropriate remedy had the district judge recused herself properly in the first instance. *Id.* at 160.

[9]  Given the fact that the Ninth Circuit found Clemens' case too speculative, Ms. Carlock requests an evidentiary hearing to determine the personal nature of the relationship between Judge Lewis and the rest of Southern District judges.

08mj8433

approval of a majority of the District Court Judges.  28 U.S.C. § 631(a).[10]  Essentially, he works for them.  *See id.*

Magistrate Judge Lewis cannot sit over any part of Ms. Carlock's case.  As a magistrate in the Southern District, he reasonably could  be viewed as an intended victim.  Certainly the rationale of *Nettles* and *Nichols* suggest as much.  But even if Judge Lewis could make a claim that he was not the intended victim, his professional relationship with the Southern District Court itself, creates a reasonable appearance of partiality, warranting recusal.  His detention order is invalid since he should not have presided over the matter in the first instance.

### III.

### DETENTION IS UNAVAILABLE  ON DANGEROUSNESS GROUNDS AND UNWARRANTED ON RISK OF NONAPPEARANCE GROUNDS

This Court reviews the detention order *de novo*.  *United States v. Koenig,* 912 F.2d 1190 (9th Cir. 1990).  In the ordinary case, the district court may rely on the record of the proceedings before the magistrate judge and may also accept additional evidence.  *United States v. Delker*, 757 F.2d 1390, 1395-96 (3rd Cir. 1985).  However, since Judge Lewis should not have presided over the detention hearing in the first instance, Ms. Carlock seeks an entirely new detention hearing.[11]

---

[10]  In finding that the speculative relationship between the judges did not warrant recusal, *Clemens* relied on *United States v. Gordon*, 974 F.2d 1110 (9th Cir. 1992) (overruled on other grounds).  In *Gordon,* the Ninth Circuit held that recusal was not warranted when the district court judge had been appointed by former president Ronald Reagan, the intended victim of the alleged crime.  While *Clemens* characterized *Gordon* much more broadly than can reasonably read, it is really irrelevant here.  Former President Reagan appointed the district court judge for life and had no more authority over him.  Obviously, the Southern District Court judges all pass on Judge Lewis' reappointment.  28 U.S.C. § 631(a).  Significantly, they also pass on whether he continues with his present appointment.  28 U.S.C. § 631(I) (authorizing the district court to remove a magistrate subject to a majority vote).  Unlike the district judge in *Gordon* with all his Article III protections, the magistrate judge here depends on the Southern District bench for continued employment.  In addition, they review his orders and any decision he makes is appealable to the district court.

[11]  Because she does not know how this Court will rule on the recusal issue, she has ordered a transcript of the May 21, 2008 detention hearing.  It has not yet arrived  but will be provided as soon as it is delivered to counsel.

08mj8433

The Bail Reform Act, 18 U.S.C. §§ 3141-3156, requires release pending trial "unless the judicial officer determines that such release will not reasonably assure the appearance of the person as required or will endanger the safety of any other person or the community." 18 U.S.C. § 3142(b). As a matter of first principles, "[f]ederal law has traditionally provided that a person arrested for a non-capital offense shall be admitted to bail." *United States v. Townsend*, 897 F.2d 989, 993 (9th Cir. 1990) (citations omitted). "Only in rare cases should release be denied . . . [and] [d]oubts regarding the propriety of release are to be resolved in favor of defendants." *Id*. (emphasis supplied). A detention order must be "consistent with the defendant's constitutional and statutory rights." *United States v. Hir*, 517 F.3d 1081, 1086 (9th Cir. 2008) (citing *Townsend,* 897 F.2d at 994)). *See also Motamedi,* 767 F.2d at 1405 (explaining that "[t]he Fifth and Eighth Amendments' prohibitions of deprivation of liberty without due process and of excessive bail require careful review of pretrial detention orders to ensure that the statutory mandate has been respected"). In detaining Ms. Carlock on dangerousness grounds when such were not authorized by statute, by failing to consider her extensive ties to the community and by refusing to consider conditions which could ameliorate any concerns regarding either danger or flight risk, Judge Lewis did not abide by these legal principles.

**A.    Detention Is Unavailable on Grounds That Ms. Carlock Poses Some Sort of Danger To The Community.**

The government sought and obtained an order that Ms. Carlock posed a danger to the community based upon the charged offense that she was a convicted felon in possession of explosive material. This was error as a matter of law. First, the offenses charged in the criminal complaint do not allow the government to seek detention based upon the rationale that Ms. Carlock poses some form of danger to the community. The plain language of 18 U.S.C. § 3142(f) forecloses that possibility by enumerating the specific offenses for which detention on danger grounds can be sought. *See id*. at 3142(f)(1)(A)-(E). The charged offenses in the criminal complaint do not qualify under those enumerated offenses. *See id*. In concluding that the offense of being a felon in possession of explosive material qualified as a crime of violence, Judge Lewis simply ignored Ninth Circuit precedent that holds that being a felon in possession of a firearm is

not a crime of violence for purposes of the Bail Reform Act. *See United States v. Twine*, 344

F.3d 987 (9th Cir. 2003); *see also, United States v. Ingle*, 454 F.3d 1082 (10th Cir. 2006) (same);

*United States v. Bowers*, 432 F.3d 518 (3rd Cir. 2005) (same); *see also United States v. Montoya*,

486 F. Supp. 2d 996 (D. Az. 2007) (detention for dangerousness can only be sought based upon

an enumerated offense set forth in section 3142(f)(1)(A)-(E)).  While the Bail Reform Act was

amended to allow detention on danger to the community when the offense charges one with

possession of  a firearm, other destructive device or other dangerous weapon, possession of

explosive materials does not so qualify under as such under  18 U.S.C. § 921 (specifying other

dangerous weapon as a bomb, grenade or missile, and not including explosive materials).

This finding that Ms. Carlock could be detained as a danger to the community is

manifestly erroneous and cannot stand.

**B.** **The Prosecution has Not Met Its Burden of Demonstrating that There are No Conditions, or Combination of Conditions, Sufficient to Ensure Ms. Carlock's Attendance at Trial**.

The burden of proving flight risk by a preponderance lies with the prosecution. *See, e.g.,*

*United States v. Motamedi,* 767 F.2d 1403, 1406-07 (9th Cir. 1985).  "[T]he government's

burden of proof is not trivial."  *United States v. Xulam*, 84 F.3d 441, 445 (D.C. Cir. 1996).  It

must prove that no combination of conditions can reasonably assure the safety of the community

and the appearance of the defendant.  *See id*.  "The government must point to more than the

[charging document] to justify detention and must prove by . . .  a preponderance of the evidence

that the defendant poses a flight risk.  *Id*.  This Circuit has stated that:

> In concluding that the Government's burden in denying bail on the basis of flight risk is that of the preponderance of the evidence, we are not unmindful of the presumption of innocence and its corollary that the right to bail should be denied only for the strongest of reasons.

*Motamedi*, 767 F.2d at 1405-06. Not only did the Magistrate Judge err by ignoring the evidence

proffered regarding Ms. Carlock's ties to the community but he gave undue consideration to the

weight of the evidence, the least significant factor under the Bail Reform Act in detaining Ms.

Carlock.  *See United States v. Honeyman*, 470 F.2d 473, 474-75 (9th Cir. 1975); *see also id*.

(where offense does not qualify as one authorizing detention on dangerousness grounds and does

not give rise to presumption, weight of evidence has diminished significance).  In fact, this Circuit has found that a detention ordered predicated primarily upon the weight of the evidence to be error.  In *Motamedi*, the Ninth Circuit reversed the district court's detention order, stating:

> It is apparent from the record below that the district court accorded great weight to the charges against Motamedi and the Government's assertions of his guilt.  Our court has stated, however, that the weight of the evidence is the least important of the various factors . . . . Although the statute permits the court to consider the nature of the offense and the evidence of guilt, the statute neither requires nor permits a pretrial determination that the person is guilty. . . . . These factors may be considered only in terms of the likelihood that the person will fail to appear or will pose a danger to any person or to the community.  Otherwise, if the court impermissibly makes a preliminary determination of guilt, the refusal to grant release could become in substance a matter of punishment.

*Motamedi*, 757 F.2d at 1408 (internal citations omitted).

While Judge Lewis failed to take into account the fact that Ms. Carlock has been in San Diego her entire life, that she would have nowhere to flee to, that her family ties here are extensive, that she was employed and in school at the time of the offense and that she had a place to reside if released on bail.  He did discuss her criminal history and accorded it, along with the weight of the evidence, undue weight.  With the exception of the one robbery conviction, Ms. Carlock's criminal history is of a relatively minor nature.  While she does have some notations of failures to appear, she has no pending or active warrants or cases, thus indicating that she did appear in court and took care of these matters.

Under the Bail Reform Act, the pertinent considerations are:

(1)  The nature and circumstances of the offense charged, including whether the offense involves a narcotic drug;

(2) The weight of the evidence;

(3)  The history and characteristics of the person including:  the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history of drug and alcohol abuse, criminal history, and record at court proceedings; and whether someone is on probation, or parole.

*Id*. at § 3142(g).  Here, both the nature and circumstances of the offense, in that does not involve

08mj8433

a narcotic drug, does not involve a crime of violence and carries relatively light guidelines' sentence weighs in favor of bail as opposed to Judge Lewis' conclusion that each favored detention.  The weight of the evidence is the least significant factor  but the only conclusive, if one can call unseen and unsworn evidence conclusive, is the events occurring on May 13, 2008 where Ms. Carlock was supposedly captured on videotape using the false identification but never possessing the gunpowder.

Regarding the other considerations, Ms. Carlock's own character, physical and mental condition, her family ties, employment, length of residence in the community and ties thereto, history of drug and alcohol abuse and criminal convictions as well as whether someone is on probation or parole at the time of arrest, on the whole  favor setting bail in this case.  Ms. Carlock was employed, was in school, has all her family here, was not on probation or parole at the time of the offense and had only a self- report of drug use some weeks prior to her arrest.

**C.    The Magistrate Judge's Failure to Consider Conditions of Release was Error.**

Section 3142© requires the court to impose "the least restrictive further condition, or combination of conditions, that will reasonably assure the appearance of the person as required." 18 U.S.C. § 3142(c)(1)(B).  After enumerating thirteen types of specific conditions that may be included, the statute authorizes "any other condition that is reasonably necessary." 18 U.S.C. § 3142(c)(1)(B)(xiv).  In terms of the conditions set forth, Ms. Carlock offered to "remain in the custody of a designated person [her father or her uncle] who agrees to assume supervision" over her, *see id*. at § 3142(c)(1)(B)(i), she would report regularly, *id*. at § 3142(c)(1)(B)(vi), she would abide by any curfew, *id*. at § 3142(c)(1)(B)(vii), and undergo any other restrictions, set forth as other conditions.  *See id*. at § 3142(c)(1)(B)((iii)-(iv); (viii)-(x).  She even offered to reside in some form of supervised housing provided by pretrial services.  There is always GPS monitoring available as well.  Notwithstanding the express directive of the Bail Reform Act that these conditions must be considered before detaining an individual, Judge Lewis failed to consider any conditions.

1

IV.

2

**CONCLUSION**

3

4

    For the foregoing reasons, Ms. Carlock respectfully requests that this Court set a

reasonable bail.

5

6

                                                 Respectfully submitted,

7

8

9

DATED:  June 3, 2008                        /s  *Shereen J. Charlick*

10

                             SHEREEN J. CHARLICK

11

                           Federal Defenders of San Diego, Inc.

                           Attorneys for Ms. Carlock

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

H:\SJC\Motions\Carlock, Rachelle\P & A motion to revoke detention order EDITED.wpd

15                     08mj8433

## <u>CERTIFICATE OF SERVICE</u>

Counsel for Defendant certifies that the foregoing document is true and accurate to the best of her information and belief, and that a copy of the foregoing document has been served this day upon:

**Michael P. Skerlos, Assistant United States Attorney**
Mike.Skerlos@usdoj.gov

## Manual Notice List

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

`(No manual recipients)`

Dated:  June 3, 2008                          ___/s/  Shereen J. Charlick___
                                                          SHEREEN J. CHARLICK
                                                          Federal Defenders
                                                          225 Broadway, Suite 900
                                                          San Diego, CA 92101-5030
                                                          (619) 234-8467  (tel)
                                                          (619) 687-2666  (fax)
                                                          e-mail: Shereen_Charlick@fd.org

**Exhibit "A"**

FILED

MAY 1 6 2008

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY _____ DEPUTY

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | Magistrate Case No. **'08 MJ 84 33** |
| Plaintiff, | |
| v. | COMPLAINT FOR VIOLATION OF: |
| | Title 18, U.S.C., Sections 842(a)(2); (i)(1); 1028A(a)(7) - Use of False Identification to Obtain Explosive Materials; Felon in Possession of Explosive Materials; Fraud in Connection with Identification Documents |
| RACHELLE LYNETTE CARLOCK, | |
| Defendant. | |

The undersigned complainant, being duly sworn, states:

### Count 1

On or about April 7, 2008, within the Southern District of California, defendant, Rachelle Lynette Carlock, knowingly furnished and exhibited a false, fictitious, and misrepresented identification, to wit, a California Driver;s License in the name of "S.M.G." to a licensed dealer in explosive materials, which identification was intended to deceive and likely to deceive said dealer, for the purpose of obtaining explosive materials pursuant to Chapter 40 of Title 18 of the United States Code, in violation of Title 18, United States Code, Sections 842(a)(2) and 844(a).

### Count 2

On or about May 1, 2008, within the Southern District of California, defendant, Rachelle Lynette Carlock, knowingly furnished and exhibited a false, fictitious, and misrepresented identification, to wit, a California Driver's License in the name of "S.M.G." to a licensed dealer in explosive materials, which identification was intended to deceive and likely to deceive said dealer, for the purpose of obtaining explosive materials pursuant to Chapter 40 of Title 18 of the United States Code, in violation of Title 18, United States Code, Sections 842(a)(2) and 844(a).

**Count 3**

On or about May 13, 2008, within the Southern District of California, defendant, Rachelle Lynette Carlock, knowingly furnished and exhibited a false, fictitious, and misrepresented identification, to wit, a California Driver's License in the name of "S.M.G." to a licensed dealer in explosive materials, which identification was intended to deceive and likely to deceive said dealer, for the purpose of obtaining explosive materials pursuant to Chapter 40 of Title 18 of the United States Code, in violation of Title 18, United States Code, Sections 842(a)(2) and 844(a).

**Count 4**

On or about the April 7, 2008, in the Southern District of California, the defendant, Rachelle Lynette Carlock, who had been convicted in the San Diego Superior Court, on November 11, 1999, of California Penal Code Section 211, a crime punishable by imprisonment for a term exceeding one year, knowingly received and possessed explosive materials, namely, Hodgdon's Triple Se7en Powder (a smokeless powder), which had been shipped and transported in interstate commerce from Herrington, Kansas to San Diego, California, in violation of Title 18, United States Code, Sections 842(i) and 844(a).

**Count 5**

On or about the May 1, 2008, in the Southern District of California, the defendant, Rachelle Lynette Carlock, who had been convicted in the San Diego Superior Court, on November 11, 1999, of California Penal Code Section 211, a crime punishable by imprisonment for a term exceeding one year, knowingly received and possessed explosive materials, namely, Hodgdon's Triple Se7en Powder (a smokeless powder), which had been shipped and transported in interstate commerce from Herrington, Kansas to San Diego, California, in violation of Title 18, United States Code, Sections 842(i) and 844(a).

**Count 6**

On or about April 7, 2008, in the Southern District of California, the defendant, Rachelle Lynette Carlock, did knowingly possess and use, in and affecting interstate commerce, without lawful authority, a means of identification of another person, to wit, a California Driver's License in the name of "S.M.G." with the intent to commit unlawful activities that constitute a violation of Federal law, to wit, Use of False Identification to Obtain Explosive Materials in violation of Title 18, United States Code Section 842(a)(2) and Felon in Possession of Explosive Materials in violation of Title 18, United States Code Section 842 (i)(1); all in violation of Title 18, United States Code, Sections 1028(a)(7) and 1028(b)(2)(B).

**Count 7**

On or about May 1, 2008, in the Southern District of California, the defendant, Rachelle Lynette Carlock, did knowingly possess and use, in and affecting interstate commerce, without lawful authority, a means of identification of another person, to wit, a California Driver's License in the name of "S.M.G." with the intent to commit unlawful activities that constitute a violation of Federal law, to wit, Use of False Identification to Obtain Explosive Materials in violation of Title 18, United States Code Section 842(a)(2) and Felon in Possession of Explosive Materials in violation of Title 18, United States Code Section 842 (i)(1); all in violation of Title 18, United States Code, Sections 1028(a)(7) and 1028(b)(2)(B).

**Count 8**

On or about May 13, 2008, in the Southern District of California, the defendant, Rachelle Lynette Carlock, did knowingly possess and use, in and affecting interstate commerce, without lawful authority, a means of identification of another person, to wit, a California Driver's License in the name of "S.M.G." with the intent to commit unlawful activities that constitute a violation of Federal law, to wit, Use of False Identification to Obtain Explosive Materials in violation of Title 18, United States Code Section 842(a)(2) and Felon in Possession of Explosive Materials in violation of Title 18, United States Code Section 842 (i)(1); all in violation of Title 18, United States Code, Sections 1028(a)(7) and 1028(b)(2)(B).

And the complainant further states that this complaint is based on the attached statement of facts, which is incorporated herein by reference.

SIGNATURE OF COMPLAINANT

SWORN TO BEFORE ME AND SUBSCRIBED IN MY PRESENCE, THIS _16th_ DAY OF MAY, 2008.

PETER C. LEWIS
UNITED STATES MAGISTRATE JUDGE

## PROBABLE CAUSE STATEMENT

I declare, under penalty of perjury, the following is true and correct:

I, Ronald T. Ribail, being duly sworn, depose and state:

I am a Special Agent with the Federal Bureau of Investigation (FBI), and I have been so employed for the past five years. I am currently assigned to the Imperial County Resident Agency of the San Diego Field Office, where my primary investigative responsibilities are to conduct counter-terrorism investigations.

In addition to the experience gained over the past five years, I have received extensive training in conducting complex investigations and the preparation and execution of search warrants, while at the FBI Academy in Quantico, Virginia.

## VIOLATIONS BEING INVESTIGATED

Your affiant is investigating violations of Title 18, United States Code, Section 842(a)(2) and (i)(1), Use of False Identification to Obtain Explosive Materials and Felon in Possession of Explosive Materials, and Title 18, United States Code, Section 1028(a)(7), Fraud in Connection with Identification Documents.

In preparing this affidavit, I have relied upon information made available to me by other law enforcement officers and agencies.

I have not set forth each and every detail obtained over the course of this investigation. I have only set forth those facts and circumstances that I believe are necessary to establish probable cause to believe Rachelle Lynette Carlock committed the above referenced crimes.

## POWDER PURCHASE AT GUN STORE IN SAN DIEGO COUNTY

On May 13, 2008, information was received indicating that a suspicious person was attempting to purchase various granular sizes of *Hodgdon's TRIPLE SE7EN* powder at a gun store located in San Diego County (hereinafter referred to as gun store). Further investigation indicated the following: an African American female with curly hair extending down past her shoulders approached an employee of the gun store, (a Federal Firearms Licensee), licensed to deal in explosives, about a powder purchase. The employee identified two bottles of black powder which the female was interested in and set them on the counter for her to inspect. The employee obtained the female's identification card (a California driver's license) which is part of the record-keeping process for making a powder purchase. The employee was going to transcribe the information from the driver's license onto an information sheet, but another employee verbally reminded him of the new store policy, which is to obtain a photocopy of the identification card. The female acted surprised by this new procedure and departed the store.

The female walked back into the store after approximately five minutes and informed the employee that she no longer desired to conduct the powder purchase. Furthermore, she wanted the photocopy of her identification card back from the store. The employee responded that he would give her the photocopy back, but had to first ask his supervisor if it was permissible. The employee went into a back room and made a second copy of the original photocopy, then returned to the female at the counter, providing her with one of the two copies. The female then departed the store.

The two bottles presented to the female for inspection were handled by her. When investigators arrived at the gun store, the store employees provided the original two bottles.

5

These bottles were taken into custody for potential latent fingerprint analysis. One of the bottles was labeled as *Hodgdon TRIPLE SE7EN* in FFG granular size.

The identification card presented by the female had a photograph on it which store employees and video surveillance indicated matched her actual appearance. The California driver's license (CDL) number on the identification card, when queried with California Department of Motor Vehicles, resulted in a record that contained a picture of a completely different person (different race, height, and weight). The name on this identification card was S.M.G. (I have intentionally excluded the complete name on the CDL to protect the identity of that individual, who appears to have no relation to these events, but instead appears to be the innocent victim of an identity theft.)

San Diego Police Department records indicate that in 2007, an individual named S.M.G. was a crime victim. The report indicated that the crime involved False Personation. Local law enforcement indicated that this charge was a type of identity theft. Further investigation indicated that the crime involved was the attempted or actual cashing of checks in the name of S.M.G. by another unknown person.

The gun store records were reviewed for earlier purchases of powder by anyone identifying themselves as S.M.G. They indicated that on April 7, 2008, someone identified as S.M.G. made a purchase of two pounds of *Hodgdon TRIPLE SE7EN* powder. Additionally, on May 1, 2008, someone identified as S.M.G. bought an additional two pounds of *Hodgdon TRIPLE SE7EN* powder.

### CARLOCK'S TRUE CALIFORNIA DRIVER'S LICENSE

Carlock's true California driver's license record, containing a photograph, was located. The photograph associated with Carlock's CDL is the same photograph used on SMG's CDL. In

other words, it appears as if SMG's CDL was altered by substituting Carlock's photograph for SMG's photograph.

Furthermore, the gun store provided a copy of the video recording from inside the store. The videotape from May 13, 2008, was reviewed by agents. The videotape depicts a female matching Carlock's description, as well as the photographs on Carlock's CDL, and the altered SMG CDL used in the transactions at the gun store.

A review of California law enforcement records indicate that Carlock has a tattoo on her right inside forearm that depicts the name "TONY" in script. An employee at the gun store who saw the suspicious black female on May 13, 2008, indicated that they saw a tattoo on her arm that spelled "TONY."

## CARLOCK'S PRIOR FELONY CONVICTION

ATF Special Agent Galvan has informed me that San Diego County District Attorney Investigator Ken Freshwater told him that on November 11, 1999, in the San Diego Superior Court, Rachelle Lynette Carlock was convicted of California Penal Code Section 211, and sentenced to two years in state prison. Upon completing her prison term she was paroled to a half-way house in San Diego, and ultimately completed her parole in 2006.

7

## CONCLUSION

Based on the aforementioned information, the author believes that probable cause exists for the arrest of Rachelle Lynette Carlock, for a violation of Title 18, United States Code Sections 842(a)(2); 842 (i)(1); and 1028(a)(7).

Ronald T. Ribail
Special Agent
Federal Bureau of Investigation

Sworn and subscribed before me
this 16th day of May, 2008

PETER C. LEWIS
United States Magistrate Judge

8